**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

ROBERT D. RICKABY,

Plaintiff,

v.

Case No. ____________________

AMANDY MOORE,
ANA PEREZ,
STEPHEN McCULLEN,
TINA TYLER,
JUSTIN RIBAULT,
JULIE ZEBOVITZ, and
NAKIA HERRINGTON,
in their individual capacities,

Defendants.

## COMPLAINT

NOW COMES the plaintiff Robert D. Rickaby, by his attorneys Gingras, Thomsen & Wachs, LLP and hereby states the following as his Complaint in the above-referenced matter.

## PARTIES

1. Plaintiff Robert D. Rickaby is, and at all relevant times was, a prisoner in the custody of the Wisconsin Department of Corrections. At all relevant times, Plaintiff was incarcerated at Racine Correctional Institution in Sturtevant, Wisconsin.

2. Defendant Amandy Moore, RN, was at all relevant times a nurse health care provider at Racine Correctional Institution. Plaintiff sues Moore in her individual capacity.

3. Defendant Ana Perez, RN, was at all relevant times a nurse health care provider at Racine Correctional Institution. Plaintiff sues Perez in her individual capacity.

4. Defendant Stephen McCullen, RN, was at all relevant times a nurse health care provider at Racine Correctional Institution. Plaintiff sues McCullen in his individual capacity.

5. Defendant Tina Tyler, RN, was at all relevant times a nurse health care provider at Racine Correctional Institution. Plaintiff sues Tyler in her individual capacity.

6. Defendant Justin Ribault, M.D. was at all relevant times a health care provider at Racine Correctional Institution. Plaintiff sues Ribault in his individual capacity.

7. Defendant Julie Zebovitz, RN, was at all relevant times a nurse health care provider at Racine Correctional Institution. Plaintiff sues Zebovitz in her individual capacity.

8. Defendant Nakia Herrington, RN, was at all relevant times a nurse health care provider at Racine Correctional Institution. Plaintiff sues Herrington in her individual capacity.

9. At all relevant times, Defendants acted under color of Wisconsin law and within the scope of their employment as correctional health care providers.

## JURISDICTION AND VENUE

10. This action arises under the Eighth Amendment to the United States Constitution and 42 U.S.C. § 1983, which provides a cause of action against a person who, under color of state law, deprives another person of rights secured by the Constitution or federal law. 42 USCS § 1983.

11. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States. 28 USCS § 1331.

12. This Court also has jurisdiction under 28 U.S.C. § 1343(a)(3) because Plaintiff seeks redress for deprivation, under color of state law, of rights secured by the United States Constitution. 28 USCS § 1343.

13. This Court has personal jurisdiction over Defendants because the acts and omissions alleged occurred in Wisconsin while Defendants provided health care to Plaintiff at Racine Correctional Institution.

14. Venue is proper in this District because a substantial part of the events and omissions giving rise to Plaintiff's claim occurred within this District. 28 USCS § 1391.

## FACTUAL ALLEGATIONS

15. On September 13, 2023, Plaintiff was seen by nursing staff for swelling in his back and was prescribed acetaminophen, ibuprofen, and lidocaine.

16. On November 28, 2023, Plaintiff fell into a wall while refereeing a basketball game during indoor recreation.

17. On December 4, 2023, Plaintiff submitted a health-service request reporting that he had been knocked into a wall and was experiencing back pain at an eight out of ten and rib pain at a nine out of ten.

18. On December 5, 2023, Defendant Herrington issued Plaintiff ibuprofen, acetaminophen, and lidocaine under nursing protocol and instructed him to stretch for pain and tightness.

19. On December 7, 2023, Plaintiff reported that he could not move his arm normally. Defendant Herrington instructed him to use lidocaine cream and stated that his injury would take time to heal.

20. Defendant Herrington asked a physician whether Plaintiff needed rib x-rays, but then informed the physician that Plaintiff had no rib swelling and "seem[ed] to embellish the discomfort."

21. On December 8, 2023, Defendant Ribault knew that Plaintiff needed an X-ray to determine the cause of his medical condition, yet refused to provide the X-ray and ordered meaningless upper back exercises.

22. In mid-December 2023, Plaintiff repeatedly reported worsening back pain and swelling, rib pain, pressure on his spine, numbness and tingling, decreased leg strength, difficulty walking, falls, constipation, and vomiting.

23. Plaintiff specifically reported that his back had given out three times in two weeks, that the swelling was progressively worsening, and that he was concerned about spinal damage and needed to see a doctor before he ended up in the hospital.

24. Defendant McCullen responded to Plaintiff's report that his condition was worsening by stating that it was "not getting worse," based on his comparison of Plaintiff's prior notes and his own assessment.

25. On December 18, 2023, Defendant McCullen assessed Plaintiff after Plaintiff complained of tingling in his chest and hip, pain in his chest and left leg, and worsening symptoms after a back injury.

26. Defendant McCullen documented that Plaintiff had made four nursing visits despite what McCullen believed were negative objective findings correlating to Plaintiff's complaints.

27. Defendant McCullen informed a physician that Plaintiff had "maxed nursing protocols" and requested a provider assessment. The physician recommended upper-back exercises and a non-urgent referral.

28. On December 19, 2023, Defendant Moore assessed Plaintiff after Plaintiff reported continuing numbness on the left side of his abdomen, constipation, and continuing moderate pain in his back and rib cage.

29. On December 19, 2023, Defendant Perez evaluated Plaintiff after correctional staff reported that Plaintiff was vomiting, could not walk, and needed prompt medical attention.

30. Plaintiff duck-walked to the toilet for a bowel movement while in the health-services unit.

31. Defendant Perez placed Plaintiff in observation for approximately three hours and documented that Plaintiff's subjective complaints did not match the objective findings she recorded.

32. Defendant Perez informed Plaintiff that he would receive an x-ray the next day and warned that, if he continued to report an emergency without objective findings supporting his reports, he would be referred for psychological evaluation.

33. On December 24, 2023, Plaintiff reported numbness in his right leg that made walking difficult, a fall that morning, and an inability to have a bowel movement since the preceding Wednesday.

34. The nurse who examined Plaintiff on December 24, 2023, Defendant Tina Tyler, documented that Plaintiff's subjective symptoms did not match the physical examination and arranged for medication, a lumbar-spine x-ray the next day, and a walker.

35. Tyler did not send Plaintiff to the emergency room in light of his clear symptoms that he needed immediate care.

36. On December 25, 2023, Plaintiff reported that he could not move or feel his legs, could not stand, and had not been able to urinate since the previous evening.

37. Defendant Zebovitz initially placed Plaintiff in medical observation despite his inability to stand or walk and the resulting risk of falling.

38. A lieutenant questioned whether Plaintiff could safely remain in an observation cell without assistance, and the decision was made to send Plaintiff to Aurora Hospital for evaluation and treatment.

39. At Aurora Hospital, imaging revealed a lesion at Plaintiff's T-4 spine.

40. Plaintiff was transported by ambulance to Froedtert Hospital, where he underwent spinal neurosurgery on December 27, 2023, to remove a tumor.

41. The surgery included removal of a portion of Plaintiff's spinal bone, fusion of two vertebrae, and placement of a cage, rods, and screws.

42. Plaintiff spent ten days in the hospital and twenty-one additional days in an inpatient rehabilitation facility, where he received physical and occupational therapy and learned to live as a paraplegic.

43. Plaintiff's tumor was diagnosed as high-grade sarcoma, a malignant cancer.

44. Plaintiff's cancer required radiation therapy and intensive inpatient chemotherapy.

45. Plaintiff developed an inability to walk and urinary retention following the surgery and remains wheelchair-bound with significant limitations from his spinal-cord injury.

46. Before Plaintiff was sent to the emergency room on December 25, 2023, he was not evaluated by an advanced-level provider despite his progressive symptoms and abnormal clinical findings.

47. The nursing staff's documented bias that Plaintiff was embellishing his symptoms adversely affected their recognition that his condition was deteriorating and resulted in delayed diagnosis and treatment of his malignant spinal tumor.

**COUNT I — DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEEDS UNDER THE EIGHTH AMENDMENT AND 42 U.S.C. § 1983**

48. Plaintiff incorporates by reference Paragraphs 1 through 47 as though fully set forth herein.

49. Plaintiff had an objectively serious medical condition: a malignant spinal tumor causing progressive back swelling and pain, numbness and tingling, loss of strength, impaired gait,

repeated falls, inability to walk, constipation, urinary retention, spinal-cord compression, and ultimately paraplegia.

50. Each Defendant personally knew of facts demonstrating a substantial risk that Plaintiff's condition required prompt medical evaluation and escalation of care.

51. Defendant Herrington knew that Plaintiff had continuing back and rib pain after trauma and later complained that he could not move his arm normally, yet minimized Plaintiff's symptoms as embellishment and did not secure prompt further evaluation.

52. Defendant McCullen knew that Plaintiff's complaints had progressed to back swelling and pressure, chest and leg pain, numbness and tingling, impaired walking, and repeated falls, yet characterized Plaintiff's condition as not worsening and limited the response to a non-urgent referral.

53. Defendant Moore knew that Plaintiff had continuing numbness, constipation, back pain, and rib pain, yet did not ensure urgent evaluation or escalation of care.

54. Defendant Perez knew that correctional staff reported Plaintiff was vomiting, unable to walk, and in need of immediate attention, yet placed Plaintiff in observation, discounted his symptoms as inconsistent with her findings, and threatened referral for psychological evaluation rather than ensuring urgent medical evaluation.

55. Defendant Ribault, Tyler and Zebovitz also knew of Plaintiff's symptoms, but through their actions or inactions, unnecessarily delayed Rickaby's treatment.

56. Defendants consciously disregarded the substantial risk to Plaintiff's health by failing to recognize and respond appropriately to Plaintiff's progressive neurological symptoms and by delaying escalation of his condition to an advanced-level provider or emergency care.

57. Defendants' acts and omissions delayed the diagnosis and treatment of Plaintiff's malignant spinal tumor and spinal-cord compression.

58. As a direct and proximate result of Defendants' deliberate indifference, Plaintiff suffered severe pain, progressive neurological impairment, emergency spinal surgery, paraplegia, loss of bowel and bladder function, emotional distress, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, individually, and grant the following relief:

A. Compensatory damages in an amount to be determined at trial;

B. Punitive damages against each Defendant in an amount to be determined at trial;

C. Costs of this action;

D. Prejudgment and post-judgment interest as permitted by law; and

E. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated this 16th day of November, 2026.

**GINGRAS, THOMSEN & WACHS, LLP**

*Electronically signed by Paul A. Kinne*
PAUL A. KINNE | SBN: 1021493
8150 Excelsior Drive
Madison, WI 53717
Tel: (608) 833-2632
Fax: (608) 833-2874
Email: kinne@gtwlawyers.com
*Attorneys for Plaintiff*